THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT J. LEGEL, Defendant-Appellant.

(No. 73-270;

Second District—December 18, 1974.

Franz & Franz, of Crystal Lake, for appellant.

William J. Cowlin, State's Attorney, of Woodstock, (James Boback, Assistant State's Attorney, and James W. Jerz, of Model District State's Attorneys Office, of counsel), for the People.

Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:

The defendant was charged, by complaint, with the offense of public indecency in violation of section 11—9(a)(3) of the Criminal Code. (Ill.

Rev. Stat. 1971, ch. 38, § 11—9(a)(3).) After a bench trial, he was found guilty and fined $100. He appeals claiming that he was not proven guilty beyond a reasonable doubt, that his actions did not occur in a public place, and that in reaching the decision the trial court erroneously considered a videotape of the defendant.

After an April 9 conversation with a neighbor of the defendant, a Crystal Lake police officer came to the neighbor's home at 4:30 P.M. on April 12, 1973. The neighbor had two minor daughters, approximately 13 and 14 years of age. The officer set up an observation post at the picture window of the neighbor's living room. The vantage, because of the grade of the lots, offered the officer a view of the neighbor's back yard, defendant's back yard, residence, and the interior of defendant's dining room which was visible through sliding glass doors. The two homes were approximateely 70' apart, on back-to-back lots which were separated by a row of bushes.

At about 8:30 P.M., the officer (with his naked eye) observed the defendant, with a light overhead, stand up from the dining room table and, without any attempt to veil the glass doors, throw his bathrobe back behind his hips, expose his nude thigh and crotch area, take his penis into his hand and move his hand about. Defendant repeated these actions at different times during the course of approximately 30 minutes.

The officer had arrived equipped with a 35-mm. tripod-mounted still camera and a mounted videotape camera with a zoom lense. After observing the first incident, he started the videotape camera and manually operated the still camera. A 22-minute videotaping of the defendant and eight still photographs resulted. The still photographs, admitted into evidence over defendant's objections, corroborated the testimony of the officer concerning defendant's actions.

After first asking whether defense counsel had any objections, and having received a negative response, the trial court viewed the videotape. The State failed to formally introduce the videotape into evidence, and it is not part of the record before this court. The officer was the only witness to testify.

■■ Defendant claims that he was not proven guilty beyond a reasonable doubt in that the evidence failed to show that it was his intent to arouse or to satisfy his own sexual desire. For a conviction under section 11—9(a)(3), it must be proved that a defendant has committed "a lewd exposure of the body done with intent to arouse or to satisfy the sexual desire of the person." Committee Comments state:

  "Subsection (a)(3) would replace the former statute aimed specifically at exhibitions (Ill. Rev. Stat. 1961, ch. 38, § 159a). The

prevailing opinion is that the exhibitionist is much more offensive than he is dangerous * * *. It should be noted that the exposure necessary is an exposure of the 'body' and not of a particular part. This does not imply an intent to regulate swim fashions or proscribe by state law the wearing of 'short shorts' on public streets. The sexual intent qualification of the provision as drafted is deemed adequate to prevent such a stretch of this subsection. However, certain exposures of the body could occur which would justly deserve attention as shocking and disgusting public affronts." (S.H.A. ch. 38, § 11—9, 433. (1972).)

"* * * (Exhibitionists are said to gain sexual gratification from their acts by the shock and consternation caused in those to whom the exposure is made. * * *)" (S.H.A. ch. 38, § 11—9, 431-32 (1972).)

To sustain a conviction for this type of crime the evidence must be clear and convincing or substantially corroborated. (*People v. Grear*, 42 Ill.2d 578, 580 (1969).) The credibility and weight to be given the testimony of the witnesses is left to the trier of fact and his decision will be reversed only if the evidence is not sufficient to remove all reasonable doubt of defendant's guilt. (*People v. Neidhofer*, 126 Ill.App.2d 65, 68 (1970).) Intent is typically proved by circumstantial evidence and, in the absence of circumstances inconsistent with the requisite intent, intent is inferred from the evidence establishing the other essential elements of the crime. *People v. Mikota*, 1 Ill.App.3d 114, 118 (1971).

In the present cause, the officer testified that he observed the defendant at different times on the same evening stand up from his dining room table, throw his bathrobe back behind his hips, expose his nude crotch area, take his penis in his hand and move his hand about. The defendant performed these acts before unveiled glass doors, with a light overhead, in plain view of the casual observer in the neighbor's living room. The defendant made no attempt to conceal his activities. To the contrary, the evidence reveals that he did everything possible in order to expose his lewd acts to others. The still photographs substantially corroborate the officer's testimony. This evidence is clear, convincing and uncontradicted. It leaves no doubt that the defendant's intent was to gain sexual gratification by causing shock and consternation in those who observed his exhibition.

Defendant next contends that the interior of his dining room, which opens onto a private backyard bordered by a row of shrubbery, is not a "public place" within the meaning of the statute. Within the section charging the defendant, "public place" is specifically defined as "any place where the conduct may reasonably be expected to be viewed by

others." (Ill. Rev. Stat. 1971, ch. 38, § 11—9(b).) In discussing what constitutes a public place, the Committee Comments state:

"Section 11—9(b) was added to forestall unnecessary ambiguities arising over the phrase 'public place' absent statutory definition. It was considered by the Illinois Supreme Court in People v. Simcox, 379 Ill. 347, 40 N.E.2d 525 (1942). In reviewing a conviction under the 'class libel' act (Ill. Rev. Stat. 1961, ch. 38, § 471), the court noted the variety of fine gradations of meaning that have been attached to the term and ruled that for purposes of that act, exhibition and sale of allegedy criminal matter in private homes by door to door solicitation was not distribution in a 'public place.' The holding is a narrow one, one that can hardly be said to preempt further discussion of the meaning of the phrase in Illinois. The meaning which has been written into this section is one that is tailored specifically for the purposes of this section— protection of the public from shocking and embarrassing displays of sexual activities.

Generally speaking, the 'reasonable expectation of public view' test adopted, is but a minute refinement of the publicity test employed in the 1953 exhibitionist statute. It is the probability of public view that is crucial rather than the ownership or use of the particular real estate upon which the act occurs. For example, a person standing nude before a lighted window of his private apartment at night, adjacent to a well traveled public sidewalk would be, for purposes of this statute, in a public place. Contrawise, a couple in a parked car on a public right-of-way but in a lonely country lane might not be in a public place, depending upon the likelihood of others traversing this particular area at such hours." (S.H.A. ch. 38, § 11—9, at 434 (1972).)

The example in the Committee Comments clearly denotes that a room in one's own home may be a public place under certain circumstances. The distinction between the example and the case at bar is that defendant's acts were not viewed from a vantage point on a public street [1] but from a private vantage point in the neighbor's living room. The distinction does not, however, automatically render the defendant's conduct private. The vantage point of the observer is relevant only insofar as it sheds light on the controlling inquiry of whether there was a reasonable expectation that the actor's conduct would be viewed by others. The

---

[1] Although the officer, while standing on the sidewalk in front of the neighbor's home, did not witness any of the defendant's acts, still he testified that he could see through the "upper two-thirds" of the glass doors leading into defendant's dining room.

purpose of this section is to protect the public from shocking and embarrassing displays of sexual activities. A person need not be in a public place to be a member of the public. The ambit of protection afforded by this statute clearly extends to members of the public in their own homes.

■■ The duty lies with the deviate to keep his activities private. Where the evidence shows that it was reasonably foreseeable that the lewd conduct would be viewed by the casual public observer, there is a reasonable expectation of public view, and the acts can be held to have occurred in a "public place" by reason of the statutory definition.

■■ Defendant maintains that his home is his castle and that therefore activities within the confines of his walls are private. This is a non-sequitur. It is true that a person's home is protected by law from intrusion by trespassers, but activities within the confines of one's home are protected only to the extent that the individual seeks to preserve his activities as private. "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." (*Katz v. United States*, 389 U.S. 347, 19 L.Ed.2d 576, 582, 88 S.Ct. 507 (1967).) Such is the present case. The facts, as related, clearly show that defendant made no attempt to preserve his activities as private. A reasonable man in the position of the defendant would expect his conduct to be viewed by others (and here, "others" included the minor girls of the neighboring family). We find that, under the instant circumstances, defendant's dining room qualifies as a public place within the meaning of the statute. See *People v. Baus*, 16 Ill.App.3d 136, 138 (1973).

It is finally claimed that by considering the videotape of the defendant in reaching its decision, the trial court committed reversible error. Prior to viewing the videotape, the State laid a foundation for its admission into evidence. The defense counsel, on inquiry from the trial court, stated that he had no objection to the court viewing the videotape. After the viewing, however, the State failed to formally introduce the videotape into evidence.

■■ Courts of review will not reverse for harmless, technical or formal errors where substantial justice has been done. (*People v. Jones*, 125 Ill. App.2d 30, 39 (1970).) "The question upon review is not whether the record is perfect but whether the defendant has had a fair trial under the law and whether his conviction is based on evidence establishing his guilt beyond a reasonable doubt. Where the error complained of could not reasonably have affected the result the judgment will be affirmed." *People v. Touhy*, 361 Ill. 332, 355 (1935).

■■ In the present cause, it is clear that the defendant had no objec-

tion to the trial court viewing the videotape. When the trial court viewed the videotape it became part of the evidence. The failure of the State to formally introduce the videotape was no more than a technical error. The defendant attempts to elevate the State's oversight to reversible error. We cannot agree. Defendant makes no claim that the videotape in any way mitigates the other evidence presented against him. A review of the evidence before us, which does not include the videotape, supports the finding of guilty beyond a reasonable doubt.

Judgment affirmed.

RECHENMACHER and GUILD, JJ., concur.