THE CABARET, INC., Plaintiff-Appellant, *v.* RICHARD J. DALEY, Mayor and Local License Commissioner, Defendant-Appellee.

First District (4th Division)   No. 77-95

Opinion filed September 7, 1978.—Rehearing denied December 18, 1978.

Julius Lucius Echeles and Carolyn Jaffe, both of Chicago, for appellant.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Robert L. Thompson, Assistant Corporation Counsel, of counsel), for appellee.

Mr. JUSTICE ROMITI delivered the opinion of the court:

Plaintiff, Cabaret, Inc., filed its action for a writ of *certiorari* to review the findings and order of defendant, Richard J. Daley, Mayor and Local License Commissioner of the City of Chicago (hereafter City), who revoked the municipal food dispenser and public place of amusement licenses issued to plaintiff. The circuit court affirmed the order of revocation and plaintiff appealed. The issues presented are whether plaintiff knowingly permitted an act of public indecency to be performed on its premises by its employee and whether plaintiff kept a disorderly house in violation of the Chicago Municipal Code (ch. 192, §192—1).

The revocation order stated:

"1. That on October 22, 1974, the licensee corporation [plaintiff], by and through its agent, THOMAS NATALE, manager, knowingly permitted a violation of the laws of the State of Illinois to be committed on the licensed premises, to wit: Public Indecency, contrary to Chapter 38, §11—9(d)(4), Illinois Revised Statutes, 1973.[1]

2. That on October 22, 1974, the licensee corporation, by and through its employee, VIRGINIA ROKOSZ, knowingly violated the laws of the State of Illinois upon the licensed premises, to wit: Public Indecency, contrary to Chapter 38, §11—9(a)(4), Illinois Revised Statutes, 1973.

3. That on October 22, 1974, the licensee corporation, by and through its agent, THOMAS NATALE, manager, knowingly violated the Ordinances of the City of Chicago, to wit: keeping a Disorderly House, contrary to Chapter 192, §192—1 of the Municipal Code of Chicago."

At the commission hearing, Chicago police officer Kenneth R. Wallace, whose credibility is not challenged by plaintiff on appeal, testified that on October 22, 1974, at approximately 9:30 p.m., he and a

---

[1] Obviously Ill. Rev. Stat. 1973, ch. 38, par. 11—9(a)(4) was intended.

male companion entered the plaintiff's licensed premises. They were seated at a table near the stage by the manager, Natale. Two women joined them at the table and began a conversation. Shortly thereafter, a waitress asked the officer and his friend if they would like to be alone with the ladies. When the officer replied "yes," she escorted them to a table in a darkened area at the rear of the room she called the "Love Nest." She then told the officer that with the drinks already consumed they could have two bottles of "fake champagne" and the two women at a cost of $177. Officer Wallace stated that all he had was $60. The waitress then went to the manager. He saw the waitress and manager talking but did not overhear the conversation. The waitress then returned to the table stating that he could have one bottle of champagne and the company of the two women for $60. Officer Wallace testified that while he was seated at the table, Virginia Rokosz, with whom he was conversing, began to fondle his genital organs through his pants. He then placed the two women at the table and the manager under arrest.

Plaintiff offered the testimony of Christine Wallace, one of its dancers. She testified that she worked for plaintiff and was present at the table on October 22, 1974, with Officer Wallace, his friend, and the woman who Wallace stated fondled him. She denied that she ever put her hands on the thigh of either of the two men or that she had fondled the private parts of either of the two men. She stated that she was seated across from Officer Wallace and his lady companion and could not see either of them below the waist because of the table. She denied that there was any conversation in which she participated wherein there was mention of being alone with the men in a back room. She did, however, admit that the table at which they were seated was in the back of the room.

Plaintiff contends that the administrative findings were against the manifest weight of the evidence, and that the conduct complained of was neither "public" nor "indecent." Public indecency is defined, in part, as an act of "[a] lewd fondling or caress of the body of another person of either sex" in a public place. (Ill. Rev. Stat. 1973, ch. 38, par. 11—9.) The statute further defines: " 'Public place' for purposes of this Section means any place where the conduct may reasonably be [expected] to be viewed by others." Ill. Rev. Stat. 1973, ch. 38, par. 11—9(b).

The Committee Comments to this statute state:

"The meaning which has been written into this section is one that is tailored specifically for the purposes of this section—protection of the public from shocking and embarrassing displays of sexual activities.

Generally speaking, the 'reasonable expectation of public view' test adopted, is but a minute refinement of the publicity test

employed in the 1953 exhibitionist statute. It is the probability of public view that is crucial rather than the ownership or use of the particular real estate upon which the act occurs." Ill. Ann. Stat., ch. 38, par. 11—9, Committee Comments, at 434 (Smith-Hurd 1972).

■■ In *People v. Legel* (1974), 24 Ill. App. 3d 554, 559, 321 N.E.2d 164, the court in construing the term "public place" stated: "Where the evidence shows that it was reasonably forseeable that the lewd conduct would be viewed by the casual public observer, there is a reasonable expectation of public view, and the acts can be held to have occurred in a 'public place' by reason of the statutory definition." Officer Wallace, his friend and the two women were seated in plaintiff's club, open to the public for business, where there could be no expectancy of privacy. Plaintiff's argument that there were no other persons in that area of the room is irrelevant in view of the test of the probability of public view.

■■ Plaintiff seeks to exempt itself from the statute's meaning by arguing that the act of fondling was performed through Officer Wallace's pants and therefore could not be a shocking and embarrassing display from which the public should be protected. These contentions are without merit since it is the act itself and not the exposure of the body that is considered lewd.

■■ Plaintiff next contends that the City failed to prove that the woman who fondled the officer was 17 years of age, as required in the statute. This argument was first raised on review. Since it was not raised at the commission hearing, it cannot now be raised on appeal for review of the commission findings. *Goodfriend v. Board of Appeals* (1973), 18 Ill. App. 3d 412, 305 N.E.2d 404.

Finally, plaintiff contends that Officer Wallace's testimony failed to establish that plaintiff violated the statutes and ordinance through its agents by knowingly permitting the premises to be used in part for the practice of lewdness. In this regard we note that the evidence did not establish that Virginia Rokosz was plaintiff's employee.

■■ The local commissioner was the trier of fact and had the prerogative of determining the credibility of the witnesses who testified, the weight to be given their testimony, and the inferences to be drawn from the evidence. (*Taylor v. Civil Service Com.* (1961), 33 Ill. App. 2d 48, 178 N.E.2d 200.) The City charged that plaintiff knowingly permitted a violation of the laws of public indecency to be committed on its premises. An inference of plaintiff's knowledge can be drawn from the surrounding facts and circumstances. The evidence shows that Officer Wallace was originally told his cost of the drinks and the price of the women would be $177. However, when he told the waitress he only had $60, he saw her go to the manager and have a conversation with him. The policeman then testified that she returned to his table and said, "You could have one bottle

and both women for $60.00." It may be reasonably inferred from these facts that the waitress sought and obtained the manager's approval before accepting the lower offer by Wallace. The reasonable inference also arises that the management condoned and permitted women to solicit and engage in acts of lewd conduct on its premises in order to charge exorbitant prices for its beverages. This conclusion is further supported by the fact that plaintiff set aside the area at the rear of the room which was referred to by the waitress as the "Love Nest."

■■ The evidence sustains defendant's findings that the management knowingly permitted acts of lewdness to be committed upon the licensed premises and that plaintiff managed a disorderly establishment in violation of a City ordinance. The decision of the commissioner was not against the manifest weight of the evidence.

Accordingly, for the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

JOHNSON, P. J., and DIERINGER, J., concur.