CRAZY HORSE, INC., Plaintiff-Appellant, *v.* JAYNE M. BYRNE, Mayor, *et al.*, Defendants-Appellees.

First District (1st Division)    No. 80-1850

Opinion filed June 15, 1981.

David Potter Duff, of Oak Park, for appellant.

Stanley Garber, Corporation Counsel, of Chicago (Robert R. Retke and Leon Pawlykowycz, Assistant Corporation Counsel, of counsel), for appellees.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

After a hearing, the liquor control authorities of the city of Chicago (defendants) revoked the dram shop license of Crazy Horse, Inc., a corporation (plaintiff), which operated a bar known as the Pepper Mill. On administrative review the circuit court affirmed. Plaintiff appeals. The three charges against plaintiff will be considered separately.

## I

Charge 6 alleged defendants operated automatic amusement devices on the licensed premises without having a Public Place of Amusement License issued by the city. The pertinent city ordinance requires an "arcade license" for "a place of amusement that includes six (6) or more automatic machines or devices * * *." Municipal Code of Chicago, §104—1.

The pertinent city ordinance (Municipal Code of Chicago, §104—5) provides:

> "It shall be unlawful for any person to install, keep, maintain or use, or permit the installation, keeping, maintenance or use upon his premises of any automatic amusement machine * * * for which a license has not been issued for the current year."

A police officer testified that on December 1, 1978, he saw eight amusement devices on the licensed premises. The officer spoke to the bartender who told him these machines were in use. The bartender was unable to produce a city amusement license or an arcade license for the operation of these machines. The officer observed patrons playing the machines on the premises. The officer issued a citation for failure to have an arcade license. No evidence to the contrary was offered by plaintiff.

The pertinent statute provides (Ill. Rev. Stat. 1979, ch. 43, par. 149):

> "The local liquor control commissioner may revoke or suspend any license issued by him if he determines that the licensee has violated any of the provisions of this Act or of any valid ordinance or resolution enacted by the particular city council, president, or board of trustees or county board (as the case may be) or any applicable rule or regulations established by the local liquor control commissioner or the State commission which is not inconsistent with law."

■■ We conclude that the dram shop license of plaintiff's was properly revoked on the basis of Charge 6. We will consider the remaining charges for purposes of completion.

## II

Charge 8 alleged that on February 9, 1979, plaintiff by its agents knowingly failed to render aid and assistance or to call the police with reference to a battery committed upon Michael Dillenbeck, a patron, while on the licensed premises; contrary to article III, rule 3 of the Rules and Regulations of the Illinois Liquor Control Commission.

Dillenbeck, a patron, testified he and a friend of his went to the bar on February 9, 1979, at 12:45 a.m. They stayed about 45 minutes or an hour. They drank beer and danced. The patron was approached by a man named Glenn Mitchell who ordered him to leave the premises. The patron noticed that this man participated in checking identification cards of patrons who entered the licensed premises. On previous visits to the licensed premises, this patron had seen Mitchell wearing a "Pepper Mill" jacket, clearing glasses from tables and escorting patrons to the bar and out of the premises.

Mitchell ordered the patron to leave without stating a reason. The patron refused. Mitchell and a number of other persons seized the patron, punched him in the face and back, threw him to the ground and began to kick him. These other men also wore jackets with the name "Pepper Mill" upon them. The patron was pushed out the front door. He went immediately to the police station and reported the incident.

A police officer testified the patron had facial swelling and a bruised forehead. The officer returned to the licensed premises with the patron. The patron pointed out Mitchell and one other person to the officer as being his assailants. The police officer spoke to the president of plaintiff and to Mitchell. The president stated the incident did not occur. Mitchell told the officer he had no knowledge of such an incident. Mitchell also said he did not work at the establishment but had been there for that evening. No contrary evidence was offered by plaintiff.

■■ The trial court affirmed this finding of the defendant License Appeal Commission to revoke the license on that charge also. Pursuant to the statute above cited (Ill. Rev. Stat. 1979, ch. 43, par. 149), the violation of the Rules as charged was legally sufficient for revocation of plaintiff's license.

## III

Charge 5 alleged that on August 26, 1978, plaintiff by its agents John Prisco and Peter Gross committed a battery upon Christopher Neri, a patron of the licensed premises, contrary to section 12—3 of Criminal

Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 12—3(a)(1)). The evidence here is conflicting. Neri, the patron, testified he went to the licensed premises with a friend on August 26, 1978. The patron had two or perhaps three drinks. The patron and his friend were "talking about a girl that was there." A waitress threw a drink at Neri. He laughed and she threw a second drink at him. Four men struck the patron while escorting him out of the premises. The patron's clothing was ripped. He was thrown to the sidewalk and kicked by one of the men. The waitress and these four men all wore "Pepper Mill" shirts.

A police officer testified he was called to the scene by his watch commander and a lieutenant. The witness saw a large crowd inside the premises and a crowd gathering on the outside. The patron, Neri, had stopped the commander and lieutenant while they were driving by. The patron and four men, including John Prisco and Peter Gross, were taken to the police station. The police officer observed bruises on the patron Neri. The police officer also testified John Prisco, an officer of the plaintiff, stated the patron Neri had been drinking, became loud, and physically touched the body of a waitress. Prisco said they asked the patron to leave, and a fight ensued.

Robert Lo Bash testified he has been president of the plaintiff corporation for 4½ years. John Prisco has been a "partner" in plaintiff for the same length of time. Peter Gross was employed by plaintiff as a bartender.

The plaintiff licensee also called Patricia Newlin, who was upon the licensed premises as a patron on the night in question. She testified she saw another patron put his hand upon the "derriere" of a waitress. This patron was escorted out of the establishment without incident. This witness is a "regular" customer of the licensee and knows Lo Bash, Prisco and Gross.

David Jensen, another patron of the licensee, saw an "individual being walked to the door" by "Al" and Peter Gross. This individual struck "Al" with a glancing blow." "Al" and Peter Gross "grabbed him by the arms" and "just put him to the door."

Peter Gross testified he was a doorman at the licensed establishment. He stated the patron was simply seized and escorted out the door and the patron had assaulted the men while they were putting him out. He denied the patron had been assaulted. John Prisco denied he had ever assaulted the patron. He did not touch the patron Neri at any time. Neri was escorted out by "Peter and Al and Glen" without his assistance.

The testimony in this regard is conflicting. However, for purposes of review, the findings of the defendants as an administrative agency are prima facie true and correct. (Ill. Rev. Stat. 1979, ch. 110, par. 274.) The trial court and this court may not re-weigh the evidence, but we must

determine whether the result reached is "just and reasonable in light of the evidence presented." (*Davern v. Civil Service Com.* (1970), 47 Ill. 2d 469, 471, 269 N.E.2d 713, *cert. denied* (1971), 403 U.S. 918, 29 L. Ed. 2d 695, 91 S. Ct. 2229.) We may set aside the decisions of the agency which have been approved by the trial court only if the manifest weight of the evidence supports an opposite conclusion. *DeGrazio v. Civil Service Com.* (1964), 31 Ill. 2d 482, 489, 202 N.E.2d 522.

■■ In the case before us, we cannot say the findings here are contrary to the manifest weight of the evidence. Nor can we say that the manifest weight of the evidence supports an opposite conclusion. Accordingly, the findings of the Commission and the decision of the trial court are affirmed. The plaintiff's license was properly revoked upon Charge 5.

## IV

■■ Plaintiff argues it was denied due process of law and equal protection under the Constitution of the United States. It is manifest that plaintiff received ample notice and lengthy hearings over a long period of time. (See *People v. Jashunsky* (1972), 51 Ill. 2d 220, 225, 282 N.E.2d 1, *cert. denied* (1972), 409 U.S. 989, 34 L. Ed. 256, 93 S. Ct. 332.) In addition, there is no evidence to suggest that the procedures employed by the defendants or the penalties imposed, which were based on specific statutory provisions, were in any way arbitrary or capricious. (See *People v. Dees* (1980), 81 Ill. App. 3d 35, 37, 400 N.E.2d 1050.) Furthermore, we find no factual basis in the record before us upon which any argument of equal protection may be predicated. In any event, because no such points were raised at the hearings before the defendants, these matters cannot now be raised in this appeal after administrative review. *Cabaret, Inc. v. Daley* (1978), 66 Ill. App. 3d 326, 329, 384 N.E.2d 10, *appeal denied* (1979), 74 Ill. 2d 585.

## V

Finally, plaintiff urges the license should not have been revoked because plaintiff was able to submit a buyer ready, willing and able to purchase the business and obtain the proper license. The pertinent statute provides that upon revocation of a license for any cause (Ill. Rev. Stat. 1979, ch. 43, par. 156):

> "When any license shall have been revoked for any cause, no license shall be granted *to any person* for the period of one year thereafter for the conduct of the business of manufacturing, distributing or selling alcoholic liquor in the premises described in such revoked license." (Emphasis added.)

■■ We find no merit to this point. The statute does not give the licensing authorities discretion. Not only was the matter not raised before the

Commission, but there is no issue here as the provisions of the statute are clear and applicable to the case at bar.

The order of revocation is accordingly affirmed.

Order affirmed.

CAMPBELL, P. J., and O'CONNOR, J., concur.