**UNITED STATES**

v.

**Victor B. CARR, 260 39 5486, Lance Corporal (E–3), U.S. Marine Corps.**

**NMCM 88 1321.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 30 Oct. 1987.

Decided 23 March 1989.

Lt. Gregory J. O'Brien, JAGC, USNR, Appellate Defense Counsel.

Lt. Sigurd R. Peterson, Jr., JAGC, USNR, Appellate Government Counsel.

Before RILEY, MIELCZARSKI and ALBERTSON, JJ.

RILEY, Senior Judge:

The issue presented in this appeal is whether an unwitnessed act of sexual intercourse on a public beach late at night is a "public" (and thus indecent) act within the meaning of Article 134 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.

## BACKGROUND

At approximately 1700 on 1 August 1987, the appellant and a group of friends attended a command-sponsored "going away" party at a beach on Torrii Station, Okinawa. Around 1900, the appellant and a friend met two young ladies who were walking past the party area on the beach. The two approached the women, introduced themselves and began talking. Shortly thereafter, the group split into two couples, with the appellant staying with [P], a 16 year old daughter of an Air Force technical sergeant. Later that evening, the appellant and [P] walked down the beach together, away from the party, which was in the process of winding down. The two strolled off down the beach for about ¼ of a mile, into a camping area that was officially closed at 1900. They sat down together at a thatch-covered picnic table. On the ground next to the table was a large canvas tent. The couple remained together for several hours, and at some point after midnight, left the table and walked over to the tent. They lay down on the side of the tent and engaged in sexual intercourse.

Afterward, they dressed and walked back up the beach toward the party site. At approximately 0200, the couple was discovered by [P]'s father, who had come looking for her after she had not arrived home on time. After insistent questioning by [P]'s father, appellant admitted they had engaged in sexual intercourse.

Lance Corporal Carr was charged with rape and committing an indecent act by fornicating in public, in violation of Articles 120, 10 U.S.C. § 920, and 134, respectively, of the UCMJ. At a general court-martial, he was acquitted of the rape charge but was convicted of the Article 134 offense. He was sentenced to confinement for 1 year, reduction to pay grade E–1, forfeiture of $329.00 pay per month for 12 months, and a bad conduct discharge. The convening authority approved the sentence but suspended for 12 months the bad con-

duct discharge, all confinement in excess of that served as of the date of his action, and forfeitures in excess of $200.00 pay per month.

Before this Court, the appellant, in both written and oral argument, contends that the act of fornication did not occur in public and was thus not a criminal act cognizable under the UCMJ. *See United States v. Berry,* 6 U.S.C.M.A. 609, 20 C.M.R. 325 (1956). The linchpin of his argument is the fact that the act was unwitnessed. The appellant urges that fornication is "private" in all cases where the act passes unseen by others. The Government, on the other hand, argues that this particular act was of a public nature because it occurred on public property. That is, the nature of the act is determined by reference to its locus; if the act occurred on public property, it is, ipso facto, a public act. We reject both arguments.

## DISCUSSION

 Private sexual intercourse between unmarried persons is not punishable. *United States v. Hickson,* 22 M.J. 146 (C.M.A.1986). *See also Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed. 2d 349 (1972); *Lovisi v. Slayton,* 363 F.Supp. 620 (E.D.Va.1973). In order to constitute an offense under the UCMJ, the sexual act must be committed "openly and notoriously." *Id.* at 149, *quoting United States v. Berry,* 6 U.S.C.M.A. 609, 20 C.M.R. 325 (1956). While both counsel have cited to an array of cases purporting to delineate the scope of Article 134 in this regard, just exactly what constitutes "private" conduct or "open and notorious" conduct under the UCMJ remains unclear.

In *United States v. Berry, supra,* the Court of Military Appeals held that an act of sexual intercourse falls within the ambit of the UCMJ when the participants know that a third person is present. Whether the third person is a willing viewer or a startled passer-by is irrelevant—the know-

ing presence of another is sufficient to remove the act from the constitutionally protected realm of private conduct. *Id.* at 330. This presence can be manifested in a number of ways. For example, if an act is "visible" to another through senses other than vision, it is a public act. *See e.g., United States v. Scoby,* 5 M.J. 160 (C.M.A. 1978) (sexual act in a "semi-private" living area in the immediate vicinity of four to seven others who may or may not have been asleep); *United States v. Brundidge,* 17 M.J. 586 (AFCMR 1983) (sexual act in a three-person barracks room where others present were aware of the act although their sight was blocked by wall lockers); *United States v. Linnear,* 16 M.J. 628 (AFCMR 1983) (sexual act behind closed door with a wire opening in a public snack bar where customers were nearby waiting to be served). Military courts, however, have not heretofore been presented with a situation where the proscribed sexual act was performed without the close proximity of others, and indeed, passes entirely unnoticed.[1]

In *United States v. Scoby,* 5 M.J. 160 (C.M.A.1978), the Court of Military Appeals reaffirmed the principles set forth in *Berry.* In that case the court ruled that a sexual act in a semi-private bunkroom with at least four others present in their bunks, two of whom witnessed the act, was a public act within the meaning of Article 134, UCMJ. The court noted that a split of judicial opinion exists as to when and under what circumstances a sexual act committed in a public place becomes criminal. The court did not resolve the issue insofar as it pertains to the military, however, except to declare that the appellant's act in that case was not private. 5 M.J. at 164.

Most recently, Chief Judge Everett, in *United States v. Hickson,* 22 M.J. 146 (C.M.A.1986), after reviewing the current state of military law in this area, summarized that (1) if a couple is unmarried, then they are guilty of fornication wherever they engage in illicit sexual intercourse un-

---

1. In *United States v. Linnear,* 16 M.J. 628 (AFCMR 1983), the court ruled that a sexual act performed behind a closed door with a wire opening behind the counter of a public snack bar was not a private act. The court did not state in its opinion whether persons were present at the snack bar when the act took place or if the act was "noticed" by others.

der the circumstances in which the conduct is not "strictly private," and (2) private sexual intercourse between unmarried persons is not a criminal offense. 22 M.J. at 150. The Court did not define the term "strictly private." However, in *Hickson*, Chief Judge Everett relied extensively upon language in *United States v. Snyder*, 1 U.S.C.M.A. 423, 4 C.M.R. 15 (1952), and *United States v. Berry*, 6 U.S.C.M.A. 609, 20 C.M.R. 325 (1956). We look, likewise, to those cases for definitional guidance.

In *United States v. Snyder*, 1 U.S.C.M.A. 423, 4 C.M.R. 15 (1952), the court ruled that an accused's action in attempting to entice three servicemembers to engage in sexual intercourse with a female was an offense in violation of Article 134. In that case, the appellant argued that such conduct was constitutionally protected, much like private acts of intercourse. The court, noting that private intercourse is, in most situations, not an offense, rejected the appellant's analogy, holding that an active solicitation of immoral acts to other servicemembers is not private conduct. The court went on to state that:

> [T]his Article is not intended to set up a moral standard for the conduct of an individual's affairs in private—provided at least that the questioned conduct does not interfere with the performance of military duties. *To be the subject of proscription, acts of the character under scrutiny here must, as a general thing, involve or touch other persons.*

4 C.M.R. at 18. (Emphasis added).

In *Snyder,* the fact that the solicitation took place at a military club in the presence of others was sufficient to draw the accused's conduct out of the realm of privacy. Presumably, no violation of Article 134 would have been committed had the solicitation taken place outside the presence of others. *See* 4 C.M.R. at 18.[2]

The court in *Berry* dealt with an act of intercourse in a private hotel room that was performed in the presence of others. In that case the court reasoned that:

> The public nature of an act is not always determined by the place of occurrence. A private residence in which other persons are gathered may be regarded as a public place for the purpose of evaluating the character of conduct by one of the persons. This is particularly true when the act is of such a nature as to bring discredit upon the armed forces. (Citations omitted)

> \* \* \* \* \* \*

> In our opinion, the act is "open and notorious", flagrant, and discrediting to the military service when the participants know that a third person is present.

20 C.M.R. at 330.

■ In our view, the decisions in *Snyder* and *Berry* stand for the proposition that a sexual act can, in some circumstances, shed its constitutional protection notwithstanding its *private* location.

■ While it is true that no military court has previously addressed the meaning of the word "private," many state courts have addressed the broader issue of what constitutes a "public place" for the purposes of prohibiting sexual activity. In doing so, these courts have almost uniformly looked to the location of the act and other circumstances, generally ruling that a sexual act is public where it takes place in such a manner that it is likely to be seen by others.

In *State v. J.O.*, 69 N.J. 574, 355 A.2d 195 (1976), the Supreme Court of New Jersey held that a consensual act of sodomy in a parked car on a public street is not a public act unless the participants could reasonably be deemed to have intended, or known, that their conduct was likely to be seen by others. 355 A.2d at 196.[3]

In *Messina v. State*, 212 Md. 602, 130 A.2d 578 (1957), the Maryland Court of

---

**2.** In *Snyder,* the court stated that "if a person chooses to use obscene language out of the hearing of other individuals he does not thereby commit an offense in violation of Article 134." 4 C.M.R. at 18.

**3.** In *J.O.,* the court was interpreting a state indecency statute. Indeed, the vast majority of the cited state court decisions necessarily flow from a statutory basis. The decisions are useful, however, in determining the meaning of a "public act" under Article 134. *See United States v. Scoby, supra* (where the Court of Military Appeals utilized a similar method of legal analysis).

Appeals held that an act of masturbation in a car on a public street during the day was a public act. The court stated that what constitutes a public place depends upon the circumstances, and the place is public if the act is "likely to be seen by others." 130 A.2d at 580.

Likewise, in *People v. Legel*, 24 Ill.App. 3d 554, 321 N.E.2d 164 (1974), the court affirmed the appellant's public indecency conviction. In that case, the appellant masturbated in front of his living room window, which was in full view of other nearby residences. The court in that case reasoned that an act is public where it is reasonably foreseeable that the conduct would be viewed by a casual observer. The court went on to note with approval the comments of an Illinois legislative committee report stating that:

> [i]t is the probability of public view that is crucial rather than the ownership or use of the particular real estate upon which the act occurs. For example, a person standing nude before a lighted window of his private apartment at night, adjacent to a well traveled public sidewalk would be ... in a public place. Contrawise, a couple in a parked car on a public right-of-way but in a lonely country lane might not be in a public place, *depending upon the likelihood of others traversing this particular area at such hours.*

321 N.E.2d at 168. (Emphasis added).

Many other state courts have adopted similar approaches to determining the public nature of a sexual act. *See e.g., State v. Ramos*, 203 N.J.Super. 206, 496 A.2d 390 (1985) (statute encompasses sexual acts which are either observed by others or intended or expected to be observed by others); *State v. Vega*, 38 Conn.Supp. 313, 444 A.2d 927 (1982) (public indecency conviction upheld where apartment window was a place where a sexual act could reasonably be seen by others); *Cabaret, Inc. v. Daley*, 66 Ill.App.3d 326, 23 Ill.Dec. 374, 384 N.E.2d 10 (1978) (public place is any place where the conduct may reasonably be expected to be viewed by others); *Commonwealth v. Gonzales*, 249 Pa.Super. 359, 378 A.2d 335 (1977) (public indecency con-

viction upheld where defendant masturbated in front seat of a double-parked car on a busy street during daylight hours); *White v. State*, 138 Ga.App. 470, 226 S.E.2d 296 (1976) (public indecency conviction upheld where sexual acts by the defendant in a car in a shopping center parking lot were determined to be reasonably expected to be viewed by the public); *Rushing v. State*, 133 Ga.App. 434, 211 S.E.2d 389 (1974) ("public place" is any place where conduct may reasonably be expected to be viewed).

Additionally, in a somewhat recent military case, the Army Court of Military Review referred to a similar "likelihood of view" test. In *United States v. Brundidge*, 17 M.J. 586 (ACMR 1983), the court, although discussing the nature of a witnessed sexual act in an inhabited bunkroom, suggested that even if the act had not been seen by others, it would retain its criminal nature due to the fact that a "substantial risk" existed that the act could have been witnessed by a bunkmate. 17 M.J. 587.

In our opinion, the approach touched upon by the Army Court in *Brundidge* and adopted by the above-cited state court decisions represents a logical extension of the basic principles set forth in *Berry* and *Snyder*. Article 134, UCMJ, prohibits acts of sexual intercourse which are "open and notorious." *See Berry*, 20 C.M.R. at 330. In our view, an act is "open and notorious" (and hence criminal) when it is performed in such a place and under such circumstances that it is reasonably likely to be seen by others. Such an analysis must, of necessity, be undertaken on a case-by-case basis, and must look not only to the locus of the act itself, but also to the attendant circumstances surrounding its commission.

### DECISION

When we apply the legal principles, as discussed above, to the facts in this case, we find as a matter of law that the act of sexual intercourse was not public, nor was it "open and notorious." First, while the act was consummated on a public beach, it occurred after midnight in an unlighted area where visibility was poor. Additionally, that part of the beach was officially closed to the general public. Second, it is clear from the record that it was the

intent of the parties *not* to be seen. The appellant testified that the two left the area of the party and went down to the "closed" section of the beach because they wanted to be alone. They did not expect others to be present nor did they expect anyone to view the act. Third, while the record reflects that the act took place within 150 feet of a campground, and within 25 feet of a portable toilet, there is nothing of record to indicate that it was likely that anyone from the campground or the command-sponsored party would have gone to the picnic area of the beach at that hour. Evidence adduced at trial revealed that most likely, the nearest people were over 200 feet away, in a camp site that was separated from the act site by a parking lot and a road. Fourth, the appellant took some steps to insure a measure of privacy. The act took place on the side of a canvas tent. Photographic evidence introduced at trial shows that the tent itself blocked any view of the act from above the beachline, and the presence of picnic tables opposite from the tent somewhat shielded any view from the beach itself.

Under these circumstances, we are unwilling to hold that this act of sexual intercourse was likely to be seen by others. Indeed, we find no indication that the act would have been expected to be viewed under the facts presented. Even in the Government's view, there is no evidence of record to indicate a likelihood that a third party would have observed the act. Government brief at 1.

Accordingly, the findings of guilty to Charge II and its sole specification alleging an indecent act by fornicating in public are set aside. That Charge is dismissed. All rights, privileges and property of which the appellant has been deprived shall be restored.

Judge MIELCZARSKI and Judge ALBERTSON concur.