**UNITED STATES**

v.

**Robert S. NADEL, 511 78 0111 Sergeant (E–5), U.S. Marine Corps.**

**NMCM 95 00467.**

U.S. Navy–Marine Corps
Court of Criminal Appeals.

Sentence Adjudged 11 Aug. 1994.

Decided 26 March 1997.

Maj R.K. Stutzel, USMC, Appellate Defense Counsel.

Anthony W. Clark, Civilian Defense Counsel.

Clayton A. Sweeney, Jr., Civilian Defense Counsel.

Herbert W. Mondros, Civilian Defense Counsel.

Maj Stephen P. Finn, USMC, Appellate Government Counsel.

Before CLARK, P.J. and McLAUGHLIN and WYNNE, JJ.

CLARK, Senior Judge:

At the appellant's special court-martial, a military judge convicted him, contrary to his pleas, of two specifications of indecent assault and one specification of indecent exposure, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (1994) [hereinafter UCMJ]. The convening authority approved the adjudged sentence, which included confinement for 35 days, forfeitures of $554.00 pay per month for two months, reduction to pay grade E–1, and a bad-conduct discharge.

The appellant has raised five assignments of error.[1] We will discuss our analysis of the issues as we perceive them.

### The Military Judge's Denial of the Motion to Suppress all of the Evidence

We have conducted a *de novo* review of the military judge's ruling denying the appellant's motion to suppress all of the evidence admitted in the government's case. We are satisfied that the military judge did not err in denying the motion.

The appellant has made an admirable effort to characterize his case as a witch hunt and to bring himself under the umbrella of certain Department of Defense policy guidelines aimed at protecting the privacy of adult service members who engage in consensual sexual acts in private. He failed at both efforts.

At his special court-martial, the appellant moved to suppress "all statements and other evidence obtained pursuant to the investigation ... of Sgt Nadel," on the basis that "the investigation was initiated and pursued without credible information in violation of applicable Department of Defense regulations." Appellate Exhibit XV at 1. The appellant relies principally upon two Department of Defense documents: Department of Defense Instruction 5505.8 of 5 Feb. 1994; subj: Investigations of Sexual Misconduct by the Defense Criminal Investigative Organizations and other DoD Law Enforcement Organizations [hereinafter DoD Instruction 5505.8], and Department of Defense Directive 1332.14 of 29 Dec. 1994; subj: Enlisted Administrative Separations [hereinafter DoD Directive 1332.14]. The stated purpose of DoD Instruction 5505.8 is to address investigative priorities and resource limitations in the investigation of allegations involving

1. I. STANDARD OF REVIEW AND THE TRIAL COURT'S ERRONEOUS RULINGS.
II. THE TRIAL COURT ERRED IN ADMITTING EVIDENCE SEIZED IN VIOLATION OF DOD REGULATIONS GOVERNING THE INVESTIGATION OF SEXUAL MISCONDUCT.
III. EVEN IF THE ILLEGALLY OBTAINED EVIDENCE IS NOT SUPPRESSED, NADEL'S CONVICTION MUST BE REVERSED AND THE CASE MUST BE REMANDED FOR FURTHER CONSIDERATION IN ACCORDANCE WITH THE GOVERNING REGULATIONS.
IV. THE STATEMENT OBTAINED FROM SGT NADEL IN VIOLATION OF HIS RIGHT TO COUNSEL MUST BE EXCLUDED FROM EVIDENCE.
V. THE EVIDENCE IS LEGALLY AND FACTUALLY INSUFFICIENT TO CONVICT UPON THE DISORDERS SPECIFIED IN CHARGE II, SPECIFICATIONS (1), (2) AND (3).

only adult private consensual sexual misconduct. It defines "sexual misconduct" as a sexual act or acts in violation of Title 10, United States Code, that occur between consenting adults, in private. The stated purpose of DoD Directive 1332.14 is to establish "policies, standards, and procedures governing the administrative separation of enlisted members from the Military Services." DoD Directive 1332.14 at 1. Although it indicates a preference for informal fact-finding inquiries and administrative separation procedures in addressing homosexual conduct, it specifically states that it does not prevent disciplinary action or trial by court-martial when appropriate. Neither of these documents, nor AL-MAR 65/94, Appellate Exhibit XX, upon which the appellant also relies, purport to create a substantive or procedural right for an individual which is enforceable by excluding from judicial proceedings evidence obtained in violation of the documents. The military judge did not err in his conclusion of law in that regard.

The only evidence admitted to prove the conduct of which the appellant was convicted consisted of the testimony of Lance Corporal (LCpl) Timperio, Record at 338–59, and the appellant's confession of 15 April 1994, Prosecution Exhibit 1.[2] The military judge found that LCpl Timperio, not an earlier investigation, provided the information that formed the basis for the charge and the specifications of which the appellant was convicted. Appellate Exhibit XLI. The record of trial contains sufficient evidence to support that finding. The appellant's confession of 15 April 1994 resulted from an interview which was initiated because of a report from LCpl Timperio. Record at 73, 89–91, 97–98. Therefore, we need not determine whether the investigations which preceded the report by LCpl Timperio violated the regulations cited by the appellant.

■ At the time that LCpl Timperio reported the appellant's indecent assault on him, he was not aware that an investigation was occurring. Record at 130. Therefore, his decision to report the appellant's conduct

could not have been tainted by an improperly initiated investigation. He was aware that he had observed the appellant commit an offense. As a member of the naval service, he was required to report his observations to proper authority. U.S. Navy Regulations, Art. 1139 (1973). Whether or not he wanted to report it was not relevant.

■ Since exclusion of evidence obtained in violation of the DoD policy statements was not the proper remedy, the military judge did not abuse his discretion in denying the motion. Perhaps the appellant's efforts might have been more fruitful had he focused on the propriety of the charges being referred to a court-martial at all, as the government has properly suggested in its brief. However, the facts of this case demonstrate that the convening authority acted well within his authority in referring the charges to a court-martial. The convening authority referred the charges to a court-martial on the basis of allegations of assaults by the appellant. This was, clearly, not an abuse of his discretion. See RULE FOR COURTS-MARTIAL 601(d)(1), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.). Since assaults are inherently non-consensual, investigation of this conduct would not have been circumscribed or limited, in any manner, by the DOD guidelines upon which the appellant relies. Therefore, although the appellant's motion at his court-martial was improperly focused and unartfully presented, we are satisfied that, had it been properly focused and presented, the result would have been the same.

### Admissibility of the Appellant's Statement

After investigators at the Criminal Investigation Division (CID) received information alleging that the appellant had indecently assaulted LCpl Timperio, the appellant's Officer-in-Charge (OIC) directed him to go to the CID office. On 15 April 1994, the appellant went to the CID office where he was interviewed by Staff Sergeant (SSgt) Abrante. After advising the appellant that

2. Prosecution Exhibits 2–4 consisted of statements by LCpl Keeley, LCpl Sharp, and Corporal Fletcher, respectively. These statements were admitted without objection, but they concern conduct of the appellant other than that of which he was convicted.

he was suspected of indecent assault and sexual harassment, SSgt Abrante advised the appellant of his rights as a military suspect. The appellant indicated his understanding of these rights and initialed alongside each statement of his rights on the "Military Suspect's Acknowledgment and Waiver of Rights" form. He then signed his signature indicating waiver of his rights. After a statement was drafted, the appellant swore to its accuracy and signed it.

The appellant claims now, and claimed at his trial, that this statement resulted from the interviewer denying him the exercise of his right to counsel. We find no merit in this claim.

■ Upon appropriate motion or objection by the defense, the government has the burden of proving the voluntariness of a confession by a preponderance of the evidence. MIL. R. EVID. 304(e), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.); *United States v. Doucet*, 43 M.J. 656, 660 (N.M.Ct.Crim.App.1995)(citing *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972)). Voluntariness is a question of law subject to *de novo* review. *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). After a *de novo* review of the evidence, we find that the appellant waived his right to consult with counsel before making a statement.

This court need not reach the issue of whether the appellant was subjected to custodial interrogation as was done by the military judge. Nevertheless, we consider the rights of a suspect during custodial interrogation to be analogous to the issue before us today.

■ A suspect subjected to custodial interrogation has the right to consult with an attorney and to have counsel present during the questioning. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The person conducting the interrogation must explain this right to the suspect before questioning begins. *Id.* The same rights apply to a suspect undergoing military interrogation. *United States v. Tempia*, 16 U.S.C.M.A. 629, 37 C.M.R. 249, 1967 WL 4235 (1967). If a suspect clearly asserts his

right to have counsel present during a custodial interrogation, the investigators must immediately cease questioning. *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981). A suspect who has asserted a right to counsel cannot be questioned regarding any offense unless an attorney is present. *Minnick v. Mississippi*, 498 U.S. 146, 156, 111 S.Ct. 486, 492–93, 112 L.Ed.2d 489 (1990). This rule does not extend to an ambiguous or equivocal reference to an attorney. *Davis v. United States*, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994).

■ During the interview, the appellant said that he would not like to discuss oral sodomy without first getting advice from a lawyer. He said that he was willing to discuss anything else without the assistance of a lawyer. He was not questioned further about oral sodomy. These facts are established by the only credible evidence presented as to the circumstances of the interview. The appellant testified to the contrary, claiming that he twice requested a lawyer and was denied that right. We find the appellant's credibility somewhat compromised by his admission, at the beginning of his statement, that he had lied under oath in his previous statement. Although such candor may be admirable in some circumstances, we find that a liar's candor about having lied does not make him any less of a liar. The appellant's reference to a lawyer was only in relation to questioning about oral sodomy. This was not a clear assertion of the right to have counsel present during the interview, especially since no questions were asked about oral sodomy.

The appellant willingly discussed the offenses of which he was convicted, and voluntarily provided the statement marked as Prosecution Exhibit 1. We find very appropriate Justice O'Connor's statement in *Davis v. United States* that "[n]othing in *Edwards* requires the provision of counsel to a suspect who consents to answer questions without the assistance of a lawyer." *Davis*, 512 U.S. at 460, 114 S.Ct. at 2356. Since the appellant consented to answer any questions except those relating to oral sodomy, his statement

resulting from those questions was properly admitted into evidence.

### Sufficiency of the Evidence

Article 66(c), UCMJ, 10 U.S.C. § 866(c), requires this Court to determine not only the legal sufficiency of the evidence, but also its factual sufficiency. The test for legal sufficiency is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see also, United States v. Turner*, 25 M.J. 324 (C.M.A.1987). Applying this test we must "draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. McGinty*, 38 M.J. 131, 132 (C.M.A.1993)(quoting *United States v. Blocker*, 32 M.J. 281, 284 (C.M.A.1991)). In doing so, appellate courts acknowledge "the responsibility of the trier of fact ... to resolve conflicts in the testimony, to weight [sic] the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *See United States v. Hart*, 25 M.J. 143, 146 (C.M.A.1987).

The elements of the indecent assaults of which the appellant was convicted were: (1) that he grabbed LCpl Timperio's crotch and touched LCpl Timperio's penis; (2) that he did so with the intent to gratify the appellant's lust or sexual desires; and (3) that his conduct was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces. MANUAL FOR COURTS-MARTIAL, UNITED STATES, (1995 ed.), Part IV, ¶ 63b [hereinafter MCM]. The testimony of LCpl Timperio and the statement of the appellant provided legally sufficient evidence of the first element. In the appellant's statement he admitted that "I did this because I was sexually aroused." Prosecution Exhibit 1 at 2. This was legally sufficient evidence of the second element. The testimony of LCpl Timperio was legally sufficient evidence for the military judge to find beyond reasonable doubt that the appellant's conduct was to the prejudice of good order and discipline in the armed forces. Record at 359.

The elements of the indecent exposure of which the appellant was convicted were: (1) that he exposed his erect penis to public view in an indecent manner and masturbated; (2) that the exposure was willful and wrongful; and (3) that his conduct was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces. MCM, Part IV, ¶ 88b. The appellant's statement presents legally sufficient evidence that he knowingly and willfully exposed his penis to the view of LCpl Timperio while he masturbated. Lance Corporal Timperio was not a participant in the act, but an unwilling viewer. This removed the act from the constitutionally protected realm of private conduct and made it public. *United States v. Carr*, 28 M.J. 661, 663 (N.M.C.M.R.1989). This evidence, plus the testimony of LCpl Timperio, established the first two elements of the offense. Legally sufficient evidence of the third element was presented in the testimony of LCpl Timperio. Record at 359.

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, ... [we are] convinced of the accused's guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325. We have applied this test in our analysis of the evidence in the appellant's case.

We recognize that consent was an issue in the allegations of indecent assault. We are satisfied beyond a reasonable doubt that LCpl Timperio did not consent to the appellant grabbing his crotch or touching his penis. Furthermore, we are satisfied beyond a reasonable doubt that the appellant did not reasonably believe that he had LCpl Timperio's consent to do those acts.

The appellant's reliance upon the self-serving disclaimer in his statement to the CID is disingenuous. His statement that "I have never forced anyone to have any non consensual homosexual acts with me" does not refute the nonconsensual nature of his conduct with LCpl Timperio. First, it is a statement of a conclusion, not a statement of a fact. Second, it presumes that indecent

assaults are gender-specific. Assaults are gender-neutral. *See* Art. 128, UCMJ, 10 U.S.C. § 928; MCM, Part IV, ¶ 54. Indecent assaults are, likewise, gender-neutral. The additional elements which make an assault indecent are the intent of the perpetrator and the circumstances under which the assault occurs. MCM, Part IV, ¶ 63b, c. The "indecent" aspect of the offense is defined as "that form of immorality relating to sexual impurity which is not only grossly vulgar, obscene, and repugnant to common propriety, but tends to excite lust and deprave morals with respect to sexual relations." MCM, Part IV, ¶ 90c. The indecency is fact-specific, not gender-specific. That LCpl Timperio was of the same gender as the appellant was merely coincidental to the validity of the findings of guilty. Had the appellant engaged in the same conduct with a female, his conduct could have been equally criminal.

We are convinced beyond a reasonable doubt of the appellant's guilt, legally and factually.

Accordingly, we affirm the findings and the sentence, as approved on review below.

Senior Judge McLAUGHLIN and Judge WYNNE concur.