UNITED STATES

v.

Dwight HENDERSON, 243 02 1721, Staff Sergeant (E–6), U.S. Marine Corps.

MNCM 89 3480.

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 4 Feb. 1989.

Decided 24 April 1991.

Capt Dwight H. Sullivan, USMCR, Appellate Defense Counsel.

LT Mary L. Livingston, JAGC, USNR, Appellate Defense Counsel.

LT L. Lynn Jowers, JAGC, USNR, Appellate Government Counsel.

Before ALBERTSON, LANDEN and LAWRENCE, JJ.

ALBERTSON, Senior Judge:

Contrary to his pleas, appellant was convicted by a general court-martial composed of officer and enlisted members of violations of Articles 80 (conspiracy), 92 (violation of a lawful order), 125 (sodomy), and 134 (false swearing, wrongful sexual intercourse, and wrongful furnishing of alcohol to minors), of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 892, 925, and 934, respectively. Appellant was sentenced to confinement for 4 years, forfeiture of all pay and allowances, reduction to pay grade E–1, and a dishonorable discharge. The convening authority approved the sentence as adjudged, but suspended confinement in excess of 2 years for a period of 1 year from the date of imposition of the sentence.

Appellant, a Marine Corps recruiter, worked out of an office in Waltham, Massachusetts, with another Marine named SSGT Llewellyn. Appellant had an apartment close by and, over a period of many months, he and Llewellyn used the apartment as a staging ground to conduct affairs with students from Waltham High School, a school within their recruiting responsibilities. Appellant was convicted of having wrongful sexual intercourse with M.B., D.J. (both members of the Marine Junior ROTC program at Waltham High), and K.H.; receiving fellatio from D.J.; using a government vehicle to drive the young women to and from; purchasing liquor for them on various occasions; making false statements denying sexual intimacy with them or knowledge that others were sexually intimate with them; and conspiring with Llewellyn, who was married, to commit adultery with M.B. Each of the females was of the lawful age to consent to intercourse.

Appellant raises several issues relating to the legal propriety and factual sufficiency of his convictions.

### Wrongful Sexual Intercourse

The novel specification under Article 134, UCMJ (Charge VI, Specification 4), alleging wrongful sexual intercourse by appellant reads as follows:

In that Staff Sergeant Dwight Henderson, U.S. Marine Corps, United States Marine Corps Recruiting Station, Boston, Massachusetts, did at the apartment of said Staff Sergeant Henderson, Waltham, Massachusetts, on or about or during May 1988, wrongfully have sexual intercourse with the following persons: Miss D.J.; Miss K.H.; and Miss M.B.; said Miss J. and said Miss B. then being students at Waltham High School, Waltham, Massachusetts under instruction as Marine Junior ROTC Cadets at said High School, said conduct under the circumstances being prejudicial to good order and discipline in the armed forces and being of a nature to bring discredit upon the armed forces.

Appellant maintains accurately that fornication, or private sexual intercourse, between unmarried persons of consenting age is not punishable. *See United States v. Hickson*, 22 M.J. 146 (C.M.A.1986). He argues that he cannot be convicted of this novel Article 134 offense as the intercourse was between consenting adults and occurred in private; it is therefore not an offense under the UCMJ. *See United States v. Carr*, 28 M.J. 661 (N.M.C.M.R. 1989). The Government counters that given certain aggravating circumstances, which were present here, appellant's fornication with these three young women is punishable under Article 134, UCMJ. In other words, the conduct is an offense under the UCMJ. *See United States v. Snyder*, 1 U.S.C.M.A. 423, 4 C.M.R. 15 (1952).

From the Government's point of view, as we discern it from the record, appellant, as a Marine recruiter in the local community, cynically exploited his position as a Marine recruiter for sexual advantage with these young women, and used the prestige and glamour of his status as a Marine recruiter to foster personal intimacies with the very type of individuals who were his most likely candidates for recruitment into the Marines. Such exploitation by a Marine recruiter discredited the Marine Corps in the

eyes of the local community. It is this exploitation of position resulting in discredit to the Marine Corps, the Government asserts, that makes appellant's private, nondeviate, consensual sexual intercourse with the three young women criminal under Article 134, UCMJ.

■ The conduct proscribed by the general article has always been confined to cases where the prejudice to good order and discipline or discredit to the service is direct and palpable. Such conduct must be easily recognizable as criminal, must have a direct and immediate adverse impact on discipline, and must be judged in the context surrounding the acts. *See United States v. Davis*, 26 M.J. 445 (C.M.A.1988); *United States v. Johanns*, 20 M.J. 155 (C.M.A.1985). This specification was challenged at trial for failing to state an offense, and a motion was made for a bill of particulars, requesting the exact time, date, place, and any witnesses to the alleged wrongful acts of intercourse.

■ We find that this specification states an offense. We conclude that by fair implication of the wording of the specification the appellant was sufficiently placed on notice of that against which he had to defend himself. The specification fairly advised him of that which constituted his offense under the UCMJ, that is, his conduct of having sexual intercourse with the three alleged young women was wrongful and prejudicial to good order and discipline or service discrediting because it was a result of the favorable relationship he developed with them because of his status as a Marine Corps recruiter and their status as Marine JROTC high school students. Where such an allegation is made to denote as criminal that which could otherwise be innocent conduct, then the use of the allegation of wrongful is critical. *See United States v. Regan*, 11 M.J. 745 (A.C.M.R. 1981). Although the word "wrongful" will not make an otherwise innocent act criminal, here the allegation describes the proscribed character of the appellant's act. *See United States v. Sandinsky*, 14 U.S.C. M.A. 563, 34 C.M.R. 343 (1964). Our conclusion that the specification states an of-

fense and that the appellant had sufficient notice against that which he had to defend is buttressed by the objections lodged against this specification at trial, the responses to those objections, and by the fact that on appeal appellant has not challenged this aspect of the specification.

■ The fact that the specification states an offense does not, of course, mean that the government has proven the appellant guilty of the criminal conduct alleged in the valid specification. We find that it is in this arena that the government has lost its case. Regardless of the moral censure to which appellant's conduct might be subject, and despite the legitmate concerns of public trust and honor expressed so ably by the Government in its brief to this Court ("A recruiter puts on the uniform and the regalia of his service for the express and sole purpose of parading his country's honor in the hope of attracting young men and women to military service."), the record fails to disclose any evidence that any directive or policy existed that prohibited appellant's conduct or that appellant was on notice that his conduct was criminal. *See United States v. Mayfield*, 21 M.J. 418 (C.M.A.1986). Although it is clear that appellant's conduct was disreputable and service discrediting, it does not follow inexorably that the general article was violated by his conduct. What may be discrediting in the moral sense is not always criminal in the legal sense. *See United States v. Johanns*, 17 M.J. 862 (A.F.C.M.R.1984); *aff'd in part, rev'd in part*, 20 M.J. 155 (C.M.A. 1985). Here, no evidence was admitted to demonstrate that the young women involved consented to the sexual intercourse with appellant only because he wore a uniform or because they believed they were required to do it to obtain favor or gain influence with him because of his position as a recruiter. *See United States v. Adames*, 21 M.J. 465 (C.M.A.1986). In addition, no evidence was offered showing that these young women had any interest in enlisting in the Marine Corps, or any other armed service, or that appellant's position as a recruiter was the basis for their relationship. Indeed, we find no evidence

that in any way indicates that appellant abused his position *as a recruiter* by having a sexual relationship with these young women. Finally, fornication is not prohibited under military law, or apparently, the laws of the Commonwealth of Massachusetts. Simply put, although the government demonstrated that appellant's conduct was morally reprehensible and was discrediting to the Marine Corps as testified to by several witnesses at trial, it failed to establish that appellant's conduct, as a Marine Corps recruiter, was prohibited by law, regulation or directive, or that appellant was fairly put on notice that his actions were discouraged as not being conduct becoming a recruiter, or that he abused his position. *See United States v. Van Steenwyk,* 21 M.J. 795 (N.M.C.M.R. 1985). Although, as stated by our sister court, "Congress never intended to regulate private moral conduct of an individual servicemember under the general articles", *Johanns,* 17 M.J. at 868 (citation omitted), aggravating factors may make such private moral conduct proscriptive, providing, of course, that the aggravating factors are proven. In appellant's case it is not readily apparent to us that his sexual intercourse with these three young women above the age of consent was aggravating such that his conduct was criminal. *See Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); *United States v. Johanns,* 17 M.J. 862. Further, given that under the UCMJ general article many forms of sex offenses have been delineated, we do not find it within our jurisdiction to add appellant's private, heterosexual, consensual, nondeviate intercourse to that list, particularly in the absence of evidence that appellant knew that sexual intercourse under these particular circumstances was prohibited, or that sexual activity and conduct with potential recruits by a recruiter has been prohibited by the Marine Corps. Accordingly, we cannot affirm his conviction under this novel Article 134 specification.

### Sodomy

Appellant was a willing participant in an act of fellatio performed upon him by one of the high school girls, D.J. He challenges his conviction under Article 125, UCMJ, asserting that consensual heterosexual fellatio, when done in private, falls within the ill-defined constitutionally-protected zone of privacy that shields this type of personal conduct from prosecution. Further, he argues that the government must show a strong and compelling justification for the prosecution, that none was shown here, and that in any event, the term "unnatural carnal copulation" is impermissibly vague and does not include within its ambit private heterosexual fellatio.

Through law, regulations, and interpretive material, the military community is made aware that certain forms of sexual intercourse are deviations from its standards. *United States v. Scoby,* 5 M.J. 160, 162 (C.M.A.1978). Article 125, UCMJ, prohibits "unnatural carnal copulation with another person of the same or opposite sex [and] [p]enetration, however, slight is sufficient to complete the offense." Appellant argues that the constitutional defect inherent in applying Article 125 to his actions is that "unnatural carnal copulation" is a vague term and should be narrowly applied to only those acts constituting the common-law offense of sodomy, and not to encompass additional forms of sexual conduct, such as fellatio, that some people might find aberrant. The broad interpretation, he argues, which would include acts such as his private, consensual, heterosexual fellatio, within the proscription of Article 125, is impermissibly vague.

Article 125, however, is sufficiently defined as to be understood by a person of ordinary intelligence in the military community and is, therefore, not unconstitutionally vague. *Id.* at 163; *cf. Rose v. Locke,* 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975). That is to say, a military member is required to take account of community standards in sexual matters, and there is a substantial range of conduct to which Article 125 clearly applies, even if an area of uncertainty, such as sexual conduct between a married couple, remains. That uncertainty, however, does not render the proscriptions within Article 125 fatally defi-

cient. *Id.; see Parker v. Levy*, 417 U.S. at 754–58, 94 S.Ct. at 2564–67, 41 L.Ed.2d at 457–60. Article 125, proscribing carnal copulation in any opening of the body except the sexual parts, specifically includes the act of fellatio. Paragraph 51c, Part IV, Manual for Courts–Martial, United States, 1984. *See United States v. Harris*, 8 M.J. 52 (C.M.A.1979); *Scoby.* The provisions of Article 125, coupled with its judicial construction, constitutes the required notice that fellatio is a criminal act. *See United States v. Tedder*, 24 M.J. 176, 180 (C.M.A. 1987).

▮ The other aspect of appellant's constitutional challenge to this statute is that there is no "compelling governmental interest" to justify intrusion upon his fundamental constitutional right to engage in consensual, heterosexual fellatio with a woman not his wife. Article 125, he argues, when applied to such an act of fellatio, performed consensually in private, violates the right to privacy as extrapolated from the Bill of Rights as interpreted and defined in various Supreme Court decisions. A compelling governmental interest, however, is not required to sustain prosecutions under statutes whose purview implicates sexual freedom or affects adult sexual relations. *See Carey v. Population Services Int'l*, 431 U.S. 678, 688 n. 5, 97 S.Ct. 2010, 2018 n. 5, 52 L.Ed.2d 675, 683 n. 5; *cf. Bowers v. Hardwick*, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986). We conclude that fellatio is included within the terms of Article 125, that the traditional statutory scope of the offense involves the taking into the mouth, or putting one's sexual organ into the mouth, of any other person. *See* Paragraph 51c, Part IV Manual for Courts–Martial (MCM), United States, 1984; Paragraph 204, Manual for Courts–Martial, United States, 1969 and 1951; Paragraph 180j, Manual for Courts–Martial, U.S. Army, 1949. We conclude that fellatio is properly chargeable as a violation of Article 125, and that the evidence is legally and factually sufficient to affirm the findings of guilty. Article 66, UCMJ; *See United States v. Turner*, 25 M.J. 324 (C.M.A.1987).

### Other Offenses

The Government concedes, and we agree, that Specification 2 under Charge VI, alleging violation of a Massachusetts statute pertaining to the furnishing of alcohol to someone under the age of 21, must fall. *United States v. Sadler*, 29 M.J. 370 (C.M. A.1990).

▮ We also set aside the findings of guilty as to the two Specifications under Charge III, alleging violations of a lawful order governing the use of a government vehicle. It was alleged, and proved, that appellant misused his government vehicle throughout his liaisons with these high school girls. There is, however, no evidence in the record from which we can infer beyond a reasonable doubt that appellant had actual knowledge of the contents of paragraph 1002, District Order P11240.-6c dated 1 December 1986, which governed the use of government vehicles by Marine recruiters in his recruiting district. This order was not a general order or regulation, and to convict appellant for violating its provisions as an other lawful order, the Government had to show that appellant had knowledge of its contents. It failed to prove that knowledge. Article 66, UCMJ, Paragraph 16c(2)(c), Part IV, MCM.

▮ The Specification under Charge II alleges a conspiracy by appellant with Staff Sergeant Llewellyn to commit the following offenses: adultery between Llewellyn and M.B., appellant's wrongful sexual intercourse with the young women, purchasing alcohol for individuals under 21, and using a government vehicle for matters of personal convenience in violation of a lawful District order. While the evidence at trial showed that appellant committed the overt acts alleged, we find that the evidence is insufficient to prove beyond a reasonable doubt that a prior agreement between appellant and Llewellyn existed to commit the criminal offenses alleged. While a conspiratorial agreement need take no particular form or be manifested in any formal words, and is generally established by circumstantial evidence as manifested by the conduct of the parties themselves,

*see United States v. Matias,* 25 M.J. 356 (C.M.A.1987), in the absence of sufficient evidence which constitutes proof beyond a reasonable doubt that an agreement existed between the alleged conspirators to commit the overt acts and realize the criminal ends of the conspiracy, the Charge and Specification must fall. Article 66, UCMJ.

Accordingly, we affirm only those findings of guilty pertaining to Charge V, Specification 1, a violation of UCMJ, Article 125, and Charge VI, Specification 1, a violation of UCMJ, Article 134, alleging that appellant made false statements under lawful oath. The remaining findings of guilty are set aside and those charges and specifications are dismissed. The sentence is also set aside but a rehearing on sentence is authorized. The record of trial is returned to the Judge Advocate General of the Navy for proper disposition.

Judge LANDEN, concurs.

LAWRENCE, Judge (concurring):

I concur in the result announced by the majority, however, I believe that additional comment is needed. The conviction under Specification 4 of Charge VI (wrongful sexual intercourse) is indeed fatally flawed in my view, and I state the reasons for this conclusion in part to make clear that Article 134 is not an unrestricted vehicle for defining new military offenses.

The Government should be cautious in using Article 134 to create new offenses. *See United States v. Stocken,* 17 M.J. 826, 830 (A.C.M.R.1984). Clause 1 of Article 134 involves "disorders and neglects to the prejudice of good order and discipline in the armed forces." Clause 2 involves "conduct of a nature to bring discredit upon the armed forces." The elements listed in the Manual for Courts–Martial (MCM), United States, 1984, indicate only that the act must either tend to prejudice good order and discipline or be of a nature to bring discredit upon the armed forces to constitute an offense. While the elements sug-

gest that Article 134 is a license to create punishable offenses, in fact the creation of novel offenses under clauses 1 and 2 requires careful drafting of the specification to make clear what facts must be proved to warrant conviction. The military judge must then analyze the specification and evidence and draft clear instructions that inform the members what they must be convinced of beyond a reasonable doubt in order to vote for conviction.[1] Basic to alleging and proving a punishable offense is the existence and identification of a wrongful act or acts that meet the requirements of either or both of the clauses.

I begin by noting that if an act is protected as part of the constitutional freedoms enjoyed by servicemembers, it is not punishable even if it seems to result in actual prejudice to good order and discipline or bring discredit upon the armed force. *Cf. United States v. Johanns,* 20 M.J. 155, 161 (C.M.A.1985). Though military efficiency or image may suffer, we permit a servicemember's proper exercise of a basic right as being essential to the maintenance of fundamental individual freedoms. Presently, an act of private fornication by consenting adults is not constitutionally protected, especially if it is accompanied by additional factors that adversely effect good order and discipline in the armed forces or discredit the armed forces.

Under either clause, a servicemember must have or be given adequate notice that his contemplated conduct is punishable. *See Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). Notice may be shown in different ways. If the act is *malum in se,* that is, it is inherently wrongful and known to be so by anyone in our society, the notice requirement is met. *See United States v. Davis,* 26 M.J. 445, 448 (C.M.A.1988). Common law offenses are of this nature as are those crimes found in most of our penal codes. In the military services, certain acts may be inher-

---

1. Trial defense counsel did not object to the instructions given. The majority has decided to determine whether the evidence itself can support the conviction, accordingly, I do not decide whether the instructions were so plainly inadequate that the conviction must be set aside on

this ground alone. *United States v. Wales,* 31 M.J. 301 (C.M.A.1990) provides an excellent example of the problems that a poorly drafted specification creates for a military judge required to draft a findings instruction.

ently wrongful and known to be so by any reasonable servicemember due to their occurrence in the military context, even though they are not prohibited in the civilian sector. *See id.; United States v. Lowe,* 4 U.S.C.M.A. 654, 16 C.M.R. 228 (1954). If the act is *malum prohibitum,* that is, wrong because it is prohibited by regulation, order, or even policy, the notice requirement may be met if the proscription applies to the accused. Of course, if this is the basis for prosecution the existence of the regulation, order, or policy statement and its applicability to the accused must be proved as an essential element of the offense. Lastly, the existence of an established custom of the military service may satisfy the notice requirement. The existence of the custom must be proved. If the custom is set forth in a punitive regulation or order, violation of it should be charged under Article 92. Para. 60(c)(2)(b), Part IV, MCM.[2]

The evidence indicates that private sexual intercourse between consenting adults is not a crime in the Commonwealth of Massachusetts where these acts took place, nor is it inherently wrongful in the military services. *United States v. Hickson,* 22 M.J. 146 (C.M.A.1986); *United States v. Berry,* 6 U.S.C.M.A. 609, 20 C.M.R. 325 (1956); *United States v. Carr,* 28 M.J. 661 (N.M.C.M.R.1989). Sexual intercourse between a recruiter and a person who is eligible to enlist into the armed forces, standing alone, is not inherently wrongful in the military context absent additional aggravating circumstances. *Cf. United States v. Woods,* 27 M.J. 749 (N.M.C.M.R. 1988), *aff'd* 28 M.J. 318 (1989). The Government proved no regulation, order, or policy that prohibited such an act, nor did it prove that the act violated an established custom of the Naval Service. I conclude,

therefore, that this appellant had no notice that his acts were punishable under the Code. On this ground, the conviction may not stand.

The lack of notice to appellant that his acts of sexual intercourse with these women were punishable is inextricably bound to the Government's general failure to plead and prove factors that establish that appellant's acts were sufficiently wrongful to be punishable since fornication alone without additional aggravating factors is not an offense. *See Hickson; Berry; Carr.* In oral argument, the Government seemed to emphasize that appellant abused his status as a recruiter in effecting these liaisons. The specification does not set forth this factor clearly but does indicate that two of the women were members of the Marine Junior Reserve Officer Training Corps (MJROTC). The importance of this status to the conviction is unclear. If it is a crime for a recruiter to have sexual intercourse with any member of the ROTC residing in the area of his recruiting responsibilities, it would be a crime for the recruiter to have consensual sexual intercourse with a college student in ROTC of his own age. If the listing of this JROTC status is important as indicating that it is punishable for a recruiter to have sexual intercourse with someone who is eligible to enlist, but who is not obligated to do so, then it may logically follow that any person residing in the area of the recruiter's recruiting responsibilities of requisite age and possessing the mental and physical qualifications to enlist in the armed forces is off-limits as a sexual partner for the recruiter. If senior officers in our recruiting commands believe that recruiters may not have consensual, nondeviate sexual relations with any member of the ROTC or any potential recruit in the

---

**2.** Two other principles limit liability under Article 134. A *mens rea* must accompany the act that is sufficiently culpable to support a criminal sanction. For example, punishment may not be based on simple negligence absent a statutory proscription or "ancient usage." *See, e.g., United States v. Manos,* 8 U.S.C.M.A. 734, 25 C.M.R. 238 (1958). In this case, appellant's acts were intentional and thus the requirement of an adequate *mens rea* is met. Also, prosecution under either clause may be barred by the pre-

emption doctrine. Para. 60(c)(5)(a), Part IV, MCM; *see e.g., United States v. Kick,* 7 M.J. 82 (C.M.A.1979); *United States v. Norris,* 2 U.S.C. M.A. 236, 8 C.M.R. 36 (1953). The Code and the MCM clearly set out several kinds of consensual sexual crimes, but their elements do not encompass the acts of appellant. No case to date holds that Article 134 novel offenses involving consensual sexual acts are preempted by similar offenses listed under the other punitive Articles.

area of the recruiter's responsibilities, they should immediately inform their subordinates of that fact in an unambiguously drafted regulation, order, or policy statement.

The Government brief alludes to another factor that may make appellant's acts of sexual intercourse punishable; namely, that they were not private because, though cut off from view by a closed door, they took place in a bedroom of an occupied apartment under conditions whereby others in the apartment could reasonably conclude that sexual intercourse was occurring. This factor cannot be found in the language of the specification nor did the military judge set it out in his instructions to the members. An act of sexual intercourse is not private when "it is performed in such a place and under such circumstances that it is reasonably likely to be *seen* by others." *Carr* at 665 (emphasis added). The acts of which appellant was convicted took place in a bedroom behind a closed door. Even absent *Carr*, I could not take seriously the contention that, in today's military services wherein many unmarried servicemembers share houses and apartments due in part to limited financial resources, an act of sexual intercourse taking place behind closed doors in a house or apartment loses its private character simply because others in the house or apartment deduce or speculate that it is occurring.

The failure of proof of aggravating factors that leads to the legal conclusion that this conviction cannot be affirmed also results in factual insufficiency to support affirmance. In this case, the Government prosecuted on the basis that appellant's acts both tended to prejudice good order and discipline and discredit the Naval Service. Under the first clause, the tendency of the act to prejudice good order and discipline must be reasonably direct and palpable in order to be punishable. *See Johanns; United States v. Holiday*, 4 U.S. C.M.A. 454, 16 C.M.R. 28 (1954); para. 60(c)(2)(a), Part IV, MCM. The evidence is insufficient to convince me that the acts alleged and proved in this case tended to prejudice good order and discipline in a reasonably direct and palpable way. To prove service-discrediting conduct, the Government did call witnesses to show that appellant's acts injured the reputation of the Naval Service. The test is not, however, whether someone can be found and brought into court to testify that in his eyes the service was discredited by the accused's acts. The test, rather, is whether a reasonable person with knowledge of all the facts and circumstances would conclude that the appellant's acts, as established by the evidence, tended to discredit the armed forces in a substantial manner. I am unconvinced that the allegations and proof in this case establish this service-discrediting nature.

In this case, the failure to plead aggravating circumstances and the amorphous nature of the military judge's instruction invited the members to determine without any real guidance that appellant's acts were wrongful and therefore punishable. That the evidence proved appellant to be a thoroughly disreputable person made it easy for them to vote for conviction. Defective character alone is not punishable, however, and I concur in finding that this conviction cannot stand.