UNITED STATES, Appellee

v.

Dwight HENDERSON, Staff Sergeant,
U.S. Marine Corps, Appellant.

No. 66,521.
NMCM 89 3480.

U.S. Court of Military Appeals.

Argued Oct. 3, 1991.

Decided March 24, 1992.

For Appellant: *Captain Dwight H. Sullivan, USMC* (argued); *Lieutenant Mary L. Livingston, JAGC, USNR* (on brief).

For Appellee: *Lieutenant Commander Lawrence W. Muschamp, JAGC, USN* (argued); *Colonel T.G. Hess, USMC* (on brief); *Commander T.W. Osborne, JAGC, USN.*

Amici Curiae: For Appellant: *Colonel Jeffrey R. Owens* and *Captain Michael D. Burt*—for Appellate Defense Division, USAF; *Colonel Robert B. Kirby, Lieutenant Colonel Russell B. Estey, Major Michael J. Kelleher, Captain Michael J. Berrigan*—for Defense Appellate Division, U.S. Army.

*Opinion of the Court*

COX, Judge:

Appellant stands convicted of one specification of sodomy and one of false swearing, in violation of Articles 125(a) and 134, Uniform Code of Military Justice, 10 USC §§ 925(a) and 934, respectively.[1] We

---

**1.** At his court-martial, appellant was acquitted by the members of specifications alleging rape of MB; indecent assault upon MB; attempted sodomy with MB; and disobedience of a lawful order by driving an official government vehicle within 8 hours after consuming alcoholic beverages, in violation of Articles 120, 134, 80, and 92, Uniform Code of Military Justice, 10 USC §§ 920, 934, 880, and 892, respectively.

The court-martial convicted appellant, contrary to his pleas, of five specifications of conspiracy: (1) to commit adultery with MB; (2) to commit wrongful sexual intercourse with KH and DJ; (3) to commit wrongful purchase and delivery of alcoholic beverages to minors; (4) to

disobey a lawful order by driving a government vehicle for matters of personal convenience; and (5) to disobey a lawful order by driving a government vehicle after drinking alcoholic beverages. (Art. 81, UCMJ, 10 USC § 881). We note that the court-martial order (number 12-89) fails to state these specifications separately. In addition, the court-martial convicted appellant, contrary to his pleas, of separate specifications of disobeying a lawful order by driving a government vehicle for matters of personal convenience; committing sodomy with DJ (the basis of the granted issue); false swearing; wrongful purchase and delivery of alcoholic beverages to minors in violation of state law; and wrong-

granted review [2] of this issue:

CAN A SERVICEMEMBER BE CONVICTED OF AN ARTICLE 125 OFFENSE FOR ENGAGING IN PRIVATE, NONCOMMERCIAL, CONSENSUAL HETEROSEXUAL FELLATIO?

The prosecution established that appellant, a 31-year-old Marine Corps recruiter, requested and received consensual fellatio from a 16-year-old female who was a cadet in the Marine Junior ROTC program at a local high school. Technically, the cadet was not under active recruitment at the time and held no formal military status. Moreover, the happenstance of a military relationship, if any, between the two was not an element of the Article 125 charge. Therefore, for the purpose of evaluating the sufficiency of this finding, we will treat this allegation simply as one involving consenting persons above the age of consent.[3]

Appellant challenges his sodomy conviction on two grounds: First, he contends that the conduct herein was not the sort of conduct that was intended to be proscribed by Article 125(a). Second, he contends that, even if Congress intended to proscribe the conduct, it falls within a constitutionally protected zone of privacy. We consider these arguments in order.

I

In relevant part, Article 125 provides:

(a) Any person subject to this chapter who engages in *unnatural carnal copulation* with another person of the same or opposite sex *or with an animal* is guilty of sodomy. Penetration, however slight, is sufficient to complete the offense.

(Emphasis added.)

The language of the Article makes it clear that, under the rubric "sodomy," Con-

---

fully having sexual intercourse with DJ, KH and MB. Arts. 92, 125, and 134, UCMJ, 10 USC §§ 892, 925, and 934, respectively.

The Court of Military Review set aside appellant's conviction of wrongfully having sexual intercourse and dismissed that specification. Recognizing that "fornication is not prohibited under military law, or apparently, the laws of the Commonwealth of Massachusetts," the court found the other circumstances of the case insufficient to convert lawful conduct into criminal conduct under the general article. 32 MJ 941, 945 (1991). *See United States v. Hickson,* 22 MJ 146 (CMA 1986); *United States v. Berry,* 6 USCMA 609, 20 CMR 325 (1956); *United States v. Snyder,* 1 USCMA 423, 4 CMR 15 (1952).

In addition, that court, with government concession, set aside the finding of guilty to violating the general article by violating a state statute against distributing alcohol to minors, apparently on the basis of instructional error. 32 MJ at 946, citing *United States v. Sadler,* 29 MJ 370 (CMA 1990).

Further, the court below set aside the conviction of disobeying a lawful order by using a government vehicle for personal use on the ground that "[t]here is ... no evidence in the record from which we can infer beyond a reasonable doubt that appellant had actual knowledge of the contents of" the order. 32 MJ at 946. The court erroneously indicated that it set aside *both* specifications of this Charge; however, appellant was acquitted of specification 2.

Finally, the Court of Military Review set aside appellant's conviction of "[t]he Specification under Charge II" (conspiracy) on the ground "that the evidence is insufficient to prove beyond a

reasonable doubt that a prior agreement between appellant and ... [another recruiter] existed to commit the criminal offenses alleged." 32 MJ at 946. The military judge, with the concurrence of the defense, directed that the single specification of Charge II be split into five separate specifications. The court members returned separate findings of guilty on each specification. Evidently, the Court of Military Review intended to set aside all findings of guilty of conspiracy because it did not approve Charge II or any specification thereunder. 32 MJ at 947.

Thus, the Court of Military Review affirmed the findings of guilty of only two offenses: sodomy and false swearing, and authorized a rehearing on sentence as to these offenses. 32 MJ at 947.

**2.** We granted review despite the fact that the rehearing on sentence has not yet been conducted. The Government did not challenge the filing of the petition as premature. *United States v. Best,* 4 USCMA 581, 16 CMR 155 (1954); *see United States v. Best,* 6 USCMA 39, 19 CMR 165 (1955). *See also United States v. Young,* 14 MJ 169 (CMA 1982) (summary disposition); *Webb v. United States,* 1 MJ 40 (CMA 1975).

**3.** Evidently, Massachusetts regards 16 as the age of consent for fellatio. *Commonwealth v. Gallant,* 373 Mass. 577, 369 N.E.2d 707, 713 (1977). Admittedly, no age of consent is provided in the Uniform Code of Military Justice for fellatio; however, the age of consent for normal heterosexual intercourse is also 16. Art. 120(b), UCMJ, 10 USC § 920(b).

gress intended to proscribe a more general range of conduct than the origin of the term might suggest. *See* Genesis 19: 4–10 (referencing male homosexuality in the city of Sodom). The question is: in 1950 when the Uniform Code was enacted, did Congress consider oral copulation to be "unnatural carnal copulation." [4]

The legislative history of Article 125(a) has been well documented by Judge Cook in *United States v. Scoby*, 5 MJ 160 (CMA 1978), and *United States v. Harris*, 8 MJ 52 (CMA 1979) and Chief Judge Fletcher in *Harris*. We need not rehash it here in its entirety. Suffice it to say, Article 125(a) amounted to a synthesis and amalgamation of preexisting sexual proscriptions in the land and naval forces of the United States, proscriptions which previously included oral copulation. Every indication in the legislative history suggests that Congress intended to incorporate the content of that prior law without significant change.

The sweep of this law was accurately and contemporaneously reflected in the Manual for Courts–Martial, United States, 1951. *See* 2B *Sutherland Statutory Construction*, Ch. 49, "Contemporaneous Construction" 1–88 (5th ed. 1992). This included the following specific proscription against oral copulation:

> It is unnatural carnal copulation for a person to take into his or her mouth ... the sexual organ of another person ... or to place his or her sexual organ in the mouth ... of another person....

Para. 204.

The range of conduct proscribed by Article 125(a) is consistent with the then-existing laws of Maryland, after which the common-law punitive articles were generally patterned. Furthermore, shortly before enactment of the Uniform Code, Congress enacted a "sodomy" statute for the District of Columbia, which was derived from the Maryland scheme and which specifically included a proscription for oral copulation. *See United States v. Harris, supra* at 57.

Thus, oral copulation has been openly and expressly prohibited in the armed forces of the United States since time immemorial. It would be sheer fantasy for us to claim to know now that, in 1950, Congress really intended to legalize fellatio in the military. This history of consistent construction eliminates any contention that appellant was not reasonably on notice that the conduct was punishable. *Rose v. Locke*, 423 U.S. 48, 52, 96 S.Ct. 243, 245, 46 L.Ed.2d 185 (1975); *Wainwright v. Stone*, 414 U.S. 21, 22–23, 94 S.Ct. 190, 192–93, 38 L.Ed.2d 179 (1973). We proceed to the much more tenable argument that, under the changed social and sexual mores of the day, acts of oral copulation in private, between consenting heterosexuals above the age of consent are or should be protected within a constitutional right of privacy.

## II

The Supreme Court of the United States, over the years, has recognized a variety of interests constitutionally protected in the name of privacy. Among these are the right to advertise and distribute contraceptives to minors, *Carey v. Population Services International*, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977); the right of a woman to terminate a pregnancy, *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); the right to possess obscene materials in private, *Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); and the right of married couples to use contraceptives, *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). *See also Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972) (affirming writ vacating conviction for distributing contraceptives to persons of unknown marital status); *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (nullifying a miscegenation statute).

---

**4.** Thus, appellant's statistical surveys purporting to indicate present-day attitudes toward fellatio by Americans are singularly unhelpful.

However, the High Court's most recent pronouncement in this area, *Bowers v. Hardwick*, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986), may have signaled a significant reversal of this trend. Hardwick was charged under Georgia's sodomy statute for a consensual act with another adult male in the privacy of Hardwick's bedroom in his home.[5] Hardwick brought suit challenging the constitutionality of the statute after the District Attorney withheld presentment to the grand jury. The District Court granted Bowers' (the Attorney General of Georgia) "motion to dismiss for failure to state a claim." 478 U.S. at 188, 106 S.Ct. at 2842. The Court of Appeals reversed, holding that the statute violated Hardwick's fundamental rights under the Ninth Amendment and the Due Process Clause of the Fourteenth Amendment. The Supreme Court reversed the Court of Appeals. *Id.* at 189, 106 S.Ct. at 2843.

Admittedly, the majority focused on the constitutionality of the Georgia statute as it pertained to consensual "homosexual sodomy," leaving open the question of the constitutionality of consensual heterosexual sodomy. Still, the majority's analysis suggests an approach that seems to be applicable to any claimed due process right.[6] First, the majority framed the discussion in terms of "whether the Federal Constitution confer[red] a fundamental right upon homosexuals to engage in sodomy," not whether the Court viewed "laws against sodomy between consenting adults in general, or between homosexuals in particular, ... [as] wise or desirable." *Id.* at 190, 106 S.Ct. at 2843. Further, the majority focused on the specific activity in question, rather than on some generalized notion of a "right to be let alone." *Cf. Olmstead v. United States*, 277 U.S. 438, 478,

48 S.Ct. 564, 572, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting).

Referring then to the "legion" of cases in which the Due Process Clauses of the Fifth and Fourteenth Amendments had been interpreted as "hav[ing] substantive content," the majority labeled them "cases ... recognizing rights that have little or no textual support in the constitutional language." Into that category, the majority placed "the privacy cases from *Griswold* to *Carey*." *Id.* at 191, 106 S.Ct. at 2844.[7]

Implicitly criticizing the Court's own prior holdings, the majority reviewed the catch phrases previously employed by the Court "to identify the nature of the rights qualifying for heightened judicial protection," as it strove "to assure itself and the public that announcing rights not readily identifiable in the Constitution's text involve[d] much more than the imposition of the Justices' own choice of values on the States and the Federal Government." *Id.* at 191, 106 S.Ct. at 2844. These included "those fundamental liberties that are 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if [they] were sacrificed.'" *Id.* at 191–92, 106 S.Ct. at 2844, quoting *Palko v. Connecticut*, 302 U.S. 319, 325, 326, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937). In addition, there were "those liberties that are 'deeply rooted in this Nation's history and tradition.'" *Id.* 478 U.S. at 192, 106 S.Ct. at 2844, quoting *Moore v. East Cleveland*, 431 U.S. 494, 503, 97 S.Ct. 1932, 1938, 52 L.Ed.2d 531 (opinion of Powell, J.). However, even using these "tests," the *Hardwick* majority found no "fundamental right" of "homosexuals to engage in acts of consensual sodomy." *Id.* 478 U.S. at

---

5. Coincidentally, § 16-6-2, Georgia Code Ann. (1984), defined "sodomy" as "perform[ing] or submit[ting] to any sexual act involving the sex organs of one person and the mouth ... of another...." 478 U.S. 186, 188 n. 1, 106 S.Ct. 2841, 2842 n. 1, 92 L.Ed.2d 140 (1986).

6. Justice Stevens, with whom Justices Brennan and Marshall joined, dissenting, pointed out that "the rationale of the Court's opinion applies equally to the prohibited conduct regardless of

whether the parties who engage in it are married or unmarried, or are of the same or different sexes." 478 U.S. at 214, 106 S.Ct. at 2856 (footnote omitted).

7. According to the majority, "[t]he Court is most vulnerable and comes nearest to illegitimacy when it deals with judge-made constitutional law having little or no cognizable roots in the language or design of the Constitution." *Id.* at 194, 106 S.Ct. at 2846.

192, 106 S.Ct. at 2844. Further, the majority indicated that it was not "inclined to take a more expansive view of our authority to discover new fundamental rights embedded in the Due Process Clause." *Id.* at 194, 106 S.Ct. at 2846.

We recognize that many jurisdictions, today, have decriminalized private, noncommercial, heterosexual, consensual fellatio among adults—either as a matter of executive discretion not to prosecute or statutory revision or judicial interpretation that the conduct is constitutionally protected or not proscribed by a particular statute. *See generally* Annotation, *Validity of Statute Making Sodomy a Criminal Offense*, 20 ALR 4th 1009 (1983); Annotation, *Consent as Defense in Prosecution for Sodomy*, 58 ALR 3d 636 (1974); *Wharton's Criminal Law* §§ 294–97 at 75–105 (C. Tortia, 14th ed. 1980). In particular, it appears that Massachusetts, the Commonwealth in which the conduct charged here took place, does not deem such fellatio criminal. *Commonwealth v. Gallant*, 373 Mass. 577, 369 N.E.2d 707, 713 (1977); *Commonwealth v. Balthazar*, 366 Mass. 298, 318 N.E.2d 478, 481 (1974).

Nevertheless, this case was not brought in a Massachusetts court, and we must gauge it against our Federal statute and the Federal Constitution, as interpreted by the Supreme Court of the United States. As indicated, we construe fellatio as falling within the scope of Article 125(a). Further, absent authority from the Supreme Court, we cannot declare that there is a right to privacy in the Constitution that invalidates an Act of Congress outlawing fellatio.[8] The Legislative Branch, of course, is free to modify its statute if it chooses, and the Executive could limit prosecution. As a court, however, we are not involved in the merits of the policy. We interpret statutes; and we can strike them down only when they violate the Constitution. We perceive no such basis to invalidate this charge.

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Chief Judge SULLIVAN and Senior Judge EVERETT concur.

Judges CRAWFORD, GIERKE, and WISS did not participate.

---

**8.** Contrary to the views expressed by the *Hardwick* minority, *id.* at 215, 106 S.Ct. at 2856, we see nothing in the *Hardwick* majority opinion which suggests that the sanctity of the marital bedroom is in jeopardy.